1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    JOSEPH C. MOORE,                          Case No.:  22-CV-539 JLS (LR)

12                                Plaintiff,

13    v.                                        **ORDER DENYING PLAINTIFF'S**
                                                **MOTION FOR PRELIMINARY**
14    M. PALMER, Deputy Warden;                 **INJUNCTION**
      D. LEWIS, Associate Warden;
15    A. TAYLOR; A MEZA; R. CENTENO;
      and CHRISTOPHER DAUB,                     (ECF No. 15)
16
17                                Defendants.

18

19

20         Plaintiff Joseph C. Moore ("Plaintiff" or "Moore"), currently incarcerated at R.J.

21    Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding with a civil

22    action pursuant to 42 U.S.C. § 1983.  *See* ECF No. 1 ("Compl.").  On October 11, 2022,

23    Plaintiff filed a Motion for Preliminary Injunction.  *See* ECF No. 15 ("PI Mot.").  Plaintiff

24    requests an injunction directing Defendants, who are prison officials at RJD, to assign her[1]

25

26    _____

27    [1] Plaintiff is a transgender woman and refers to herself using she/her pronouns in her Complaint and other
      pleadings; the Court will do the same in this Order.

1

1   to single cell housing.  PI Mot. at 10.  For the reasons discussed below, the Court **DENIES**

2   **WITHOUT PREJUDICE** Plaintiff's PI Motion.

3                                        **BACKGROUND**

4       Plaintiff, a transgender woman, was transferred to RJD, a "designated hub" for

5   housing transgender inmates, in February 2018.  Compl. at 11.  In her Complaint, Moore

6   alleges that, upon her arrival at RJD, she informed her correctional counselor that she

7   wanted a single cell to "avoid any future harassment or assault attempts by other inmates."

8   *Id.* at 12.  At the classification hearing, however, Moore was assigned a double cell.  *Id.*

9       Inmate M. was assigned as Moore's cellmate.  *Id.* at 12–13.  On March 8, 2018,

10  Moore alleges "Inmate M. forced her to perform a sexual act on [him] in the middle of the

11  night."  *Id.* at 13.  Moore reported the incident to correctional staff under the Prison Rape

12  Elimination Act ("PREA") and was interviewed by the Investigative Services Unit about

13  the incident.  *Id.*  Prison officials ultimately found Moore's PREA claim "unsubstantiated."

14  *Id.*

15      Moore again sought single-cell housing "to protect her from any further abuse or

16  harassment."  *Id.* at 13.  During the next two years, Moore alleges she was "forced . . . to

17  live with numerous . . . inmates who were mentally challenged and had histories of

18  violence."  *Id.*  She alleges that "some of those inmates tried to have sex with [her] or

19  harassed her by making comments when she undressed or used the restroom."  *Id.* at 13.

20  Moore alleges this happened "from 2018 through 2020 and once in 2021."  *Id.*

21      In August 2020, Moore again requested a single cell.  *Id.* at 14.  Defendant Centeno

22  interviewed Moore; reviewed her file, which included the 2018 PREA allegations; but

23  ultimately declined to recommend Moore for a single cell.  *Id.*  Defendant Taylor

24  "endorsed" Centeno's decision.  *Id.*  On September 3, 2020, Defendant Daub, a mental

25  health supervisor, interviewed Moore, who told Daub that she needed a single cell to

26  protect her mental health, physical safety, and "serious medical needs."  *Id.*  Daub

27  / / /

1  nonetheless denied her "health care grievance." *Id* at 14–15.  Subsequent administrative

2  grievances filed by Moore were also denied. *Id.* at 15.

3        On March 21, 2022, Defendants Palmer and Lewis, RJD Chief Deputy Warden and

4  Associate Warden, respectively, interviewed Moore.  *Id.* at 16.  They discussed Moore's

5  history and medical needs.  Moore told Palmer and Lewis that she needed to be housed in

6  a single cell due to her serious medical needs and for her safety.  *Id.*  Palmer ultimately

7  declined to approve Moore for a single cell.  *Id.* at 16–17.

8        On April 15, 2022, Moore commenced the instant civil action pursuant to 42 U.S.C.

9  § 1983 and also filed motions to proceed *in forma pauperis* ("IFP") and for a preliminary

10 injunction ("PI").  *See* ECF Nos. 1–3.  In her Complaint, Moore raised Eighth Amendment,

11 Due Process, and Equal Protections claims.  She alleged she has been improperly denied

12 single-cell housing and, as a result, she has been unable receive adequate medical care for

13 her gender dysphoria.  *Id.*  She further alleged that she is unable to pursue hormone

14 replacement therapy because hormones will cause "her breasts [to] get bigger," which will,

15 in turn, "entice cellmates to harass or assault her."  *Id.* at 5.  She stated that the "mental

16 stress of being forced to live with others and undress and bathe in front of them while they

17 watch her" deprives her of her of "safe living arrangements" and, in turn, "denie[s] her

18 medical treatment."  *Id.*

19       Moore filed another motion for a PI on August 2, 2022, as well as subsequent

20 supporting documents and exhibits.  *See* ECF Nos. 6–10.  On September 22, 2022, the

21 Court granted Plaintiff's IFP motion and screened Moore's Complaint.  *See* ECF No. 12.

22 In its Order, the Court dismissed three Defendants, dismissed Moore's Equal Protection

23 and Due Process claims as to all Defendants for failure to state a claim, and ordered U.S.

24 Marshal service of the remaining six Defendants as to Moore's Eighth Amendment claims.

25 *See id*.  In the same Order, the Court denied both PI motions.  *Id.*  A summons was issued

26 on September 23, 2022, but, as of the date of this Order, no Defendant has been served.

27 *See* ECF No. 13; *see generally* Docket.

1 | **MOTION FOR PRELIMINARY INJUNCTION**

2    In her PI Motion, Moore asks the Court to issue an injunction requiring Defendants

3 to house her in a single cell.  PI Mot. at 10.

4 **I.      Legal Standard**

5    As discussed in this Court's previous Order, a federal district court may issue

6 emergency injunctive relief only if it has personal jurisdiction over the parties and subject

7 matter jurisdiction over the lawsuit.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing,*

8 *Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required

9 to take action in that capacity, only upon service of summons or other authority-asserting

10 measure stating the time within which the party served must appear to defend").  A court

11 may not attempt to determine the rights of persons not before it.  *See, e.g., Hitchman Coal*

12 *& Coke Co. v. Mitchell*, 245 U.S. 229, 234–35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727–

13 28 (9th Cir. 1983).  Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds

14 only "the parties to the action"; their "officers, agents, servants, employees, and attorneys";

15 and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2).

16    Substantively, "'[a] plaintiff seeking a preliminary injunction must establish that he

17 is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

18 of preliminary relief, that the balance of equities tips in her favor, and that an injunction is

19 in the public interest."  *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v.*

20 *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  "The first factor under

21 *Winter* is the most important—likely success on the merits."  *Garcia v. Google, Inc.*, 786

22 F.3d 733, 740 (9th Cir. 2015).  In addition, "[u]nder *Winter*, plaintiffs must establish that

23 irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."

24 *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

25 **II.     Discussion**

26    Moore's PI Motion must be denied because it is premature and because she has failed

27 to adequately establish immediate, irreparable harm and success on the merits.

4

1    First, the United States Marshal has yet to effect service upon Defendants on
2  Plaintiff's behalf.  As such, Defendants have no actual notice, *see* Fed. R. Civ. P. 65(a)(1)
3  ("The court may issue a preliminary injunction only on notice to the adverse party."), and
4  the Court has no personal jurisdiction over any Defendant at this time, *see* Fed. R. Civ. P.
5  65(d)(2) (stating a preliminary injunction binds only "the parties to the action"); *Murphy*
6  *Bros., Inc.,* 526 U.S. at 350 (stating one becomes a party "only upon service"); *Zepeda*,
7  753 F.2d at 727–28.

8    Second, even assuming this Court currently had jurisdiction over Defendants, Moore
9  would not be entitled to a preliminary injunction at this stage of these proceedings because,
10  as discussed in this Court's previous Order, "[t]he fact that plaintiff has met the pleading
11  requirement allowing h[er] to proceed with the complaint does not, ipso facto, entitle
12  h[er]to a preliminary injunction." *Claiborne v. Blauser*, No. 10-cv-2427-LKK, 2011 WL
13  3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, 2011WL
14  4765000 (E.D. Cal. Sept. 29, 2011).  Mere "[s]peculative injury does not constitute
15  irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean*
16  *Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674–75 (9th Cir. 1988).  Instead, to
17  meet the "irreparable harm" requirement, Plaintiff must do more than simply *allege*
18  imminent harm; she must demonstrate it. *Id*. at 674 (emphasis added).  This requires Moore
19  to present specific facts that show she faces a credible threat of immediate and irreparable
20  harm unless Defendants are ordered to house her in a single cell while this matter proceeds.
21  Fed. R. Civ. P. 65(b).

22    Here, Moore alleges that an injunction requiring her to be housed in a single cell is
23  necessary because of the "possibility that she could be sexually assaulted again," or the
24  "possibility [she] would . . . be housed with[,] and assaulted by[,] a person who is HIV
25  positive." PI Mot. at 6.  She also states that she uses a "C-PAP" machine for sleep apnea
26  and "if another COVID surge happens she runs the risk of contracting COVID from
27  transmission of particles going into her C-PAP machine." *Id.* at 9.  These speculative

5

1   allegations are insufficient to establish "immediate and irreparable harm." *See* Fed. R. Civ.

2   P. 65(b); *Caribbean Marine*, 844 F.2d at 674.  While Moore alleges in her Complaint that

3   she was assaulted by a cellmate over four years ago, in 2018, she has failed to allege

4   specific facts to illustrate a risk of *immediate* and irreparable harm.  *See Rigsby v. State*,

5   No. 11-cv-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (finding

6   allegation of assault that occurred years prior insufficient to establish an immediate and

7   irreparable harm).  Finally, at this stage of the proceedings, the Court cannot determine the

8   likelihood of success on the merits of Plaintiff's Eighth Amendment claims, as such an

9   assessment requires the submission of evidence rather than simply a determination as to

10  whether a claim has been plausibly stated.  As such, even if the Court had personal

11  jurisdiction over Defendants at this stage, Plaintiff would not be entitled to a preliminary

12  injunction.

13         Thus, because Defendants have not yet been served, Plaintiff has alleged only

14  speculative fears of potential future harm, and Plaintiff has not yet shown a likelihood of

15  success on the merits, the Court **DENIES** Plaintiff's PI Motion. *See Dymo Indus. v.*

16  *Tapeprinter, Inc*., 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction

17  is the exercise of a very far reaching power never to be indulged in except in a case clearly

18  warranting it.").

19                          **CONCLUSION AND ORDER**

20         For the reasons set forth above, the Court hereby **DENIES** Plaintiff's Motion for

21  Preliminary Injunction (ECF No. 15) **WITHOUT PREJUDICE**.

22         **IT IS SO ORDERED.**

23  Dated:  October 26, 2022

24                                      Hon. Janis L. Sammartino
25                                      United States District Judge

26

27

6

22-CV-539 JLS (LR)