UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH C. MOORE,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>M. PALMER, Deputy Warden;<br>D. LEWIS, Associate Warden;<br>A. TAYLOR; A MEZA; R. CENTENO;<br>and CHRISTOPHER DAUB,<br>　　　　　　　　Defendants. | Case No.: 22-CV-539 JLS (LR)<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>(ECF No. 23) |

　　　Presently before the Court is Plaintiff Joseph C. Moore's ("Plaintiff" or "Moore") Renewed Motion for Preliminary Injunction ("Mot.," ECF No. 23). Having carefully considered Plaintiff's Motion, the evidence, and the law, the Court **DENIES WITHOUT PREJUDICE** her[1] Motion for the reasons that follow.

///

---

[1] Plaintiff is a transgender woman and refers to herself using she/her pronouns in her Complaint and other pleadings; the Court, therefore, will do the same in this Order.

1

22-CV-539 JLS (LR)

# BACKGROUND

Plaintiff, a transgender woman, was transferred to R.J. Donovan Correctional Facility ("RJD") in San Diego, California, a "designated hub" for housing transgender inmates, in February 2018. Compl. at 11. In her Complaint, Moore alleges that, upon her arrival at RJD, she informed her correctional counselor that she wanted a single cell to "avoid any future harassment or assault attempts by other inmates." *Id.* at 12. At the classification hearing, however, Moore was assigned a double cell. *Id.*

Inmate M. was assigned as Moore's cellmate. *Id.* at 12–13. On March 8, 2018, Moore alleges "Inmate M. forced her to perform a sexual act on [him] in the middle of the night." *Id.* at 13. Moore reported the incident to correctional staff under the Prison Rape Elimination Act ("PREA") and was interviewed by the Investigative Services Unit about the incident. *Id.* Prison officials ultimately found Moore's PREA claim "unsubstantiated." *Id.*

Moore again sought single-cell housing "to protect her from any further abuse or harassment." *Id.* at 13. During the next two years, Moore alleges she was "forced . . . to live with numerous . . . inmates who were mentally challenged and had histories of violence." *Id.* She alleges that "some of those inmates tried to have sex with [her] or harassed her by making comments when she undressed or used the restroom." *Id.* at 13. Moore alleges this happened "from 2018 through 2020 and once in 2021." *Id.*

In August 2020, Moore again requested a single cell. *Id.* at 14. Defendant Centeno interviewed Moore; reviewed her file, which included the 2018 PREA allegations; but ultimately declined to recommend Moore for a single cell. *Id.* Defendant Taylor "endorsed" Centeno's decision. *Id.* On September 3, 2020, Defendant Daub, a mental health supervisor, interviewed Moore, who told Daub that she needed a single cell to protect her mental health, physical safety, and "serious medical needs." *Id.* Daub nonetheless denied her "health care grievance." *Id* at 14–15. Subsequent administrative grievances filed by Moore were also denied. *Id.* at 15.

On March 21, 2022, Defendants Palmer and Lewis, RJD Chief Deputy Warden and Associate Warden, respectively, interviewed Moore. *Id.* at 16. They discussed Moore's history and medical needs. Moore told Palmer and Lewis that she needed to be housed in a single cell due to her serious medical needs and for her safety. *Id.* Palmer ultimately declined to approve Moore for a single cell. *Id.* at 16–17.

On April 15, 2022, Moore commenced the instant civil action pursuant to 42 U.S.C. § 1983 and also filed motions to proceed *in forma pauperis* ("IFP") and for a preliminary injunction ("PI"). *See* ECF Nos. 1–3. In her Complaint, Moore raised Eighth Amendment, Due Process, and Equal Protections claims. She alleged she has been improperly denied single-cell housing and, as a result, she has been unable receive adequate medical care for her gender dysphoria. *See generally* Compl. She further alleged that she is unable to pursue hormone replacement therapy because hormones will cause "her breasts [to] get bigger," which will, in turn, "entice cellmates to harass or assault her." *Id.* at 5. She stated that the "mental stress of being forced to live with others and undress and bathe in front of them while they watch her" deprives her of her of "safe living arrangements" and, in turn, "denie[s] her medical treatment." *Id.* Moore filed another motion for a PI on August 2, 2022, as well as subsequent supporting documents and exhibits. *See* ECF Nos. 6–10. Plaintiff's PI motions primarily sought an injunction requiring prison officials at RJD to assign her to single-cell housing. *See generally* ECF Nos. 3, 6. However, Plaintiff also sought additional injunctive relief, for example, an order requiring prison officials to refrain from "retaliatory punishment against her," *see* ECF No. 3 at 4–7; an order requiring that any interviews of her by prison officials be conducted in the presence of an assistant warden and recorded, *see id.* at 8–9; and a "gag order" preventing prison officials from discussing this case, *see id.* at 11.

On September 22, 2022, the Court granted Plaintiff's IFP motion and screened Moore's Complaint. *See* ECF No. 12. In its Order, the Court dismissed three Defendants, dismissed Moore's Equal Protection and Due Process claims as to all Defendants for failure

to state a claim, and ordered U.S. Marshal service of the remaining six Defendants as to Moore's Eighth Amendment claims. *See id*. In the same Order, the Court denied the PI motions for multiple reasons, including that the Court lacked personal jurisdiction over the Defendants, who had not yet been served; that the Court could not enjoin claims not pleaded in the Complaint or individuals who are not parties to the action; and that Plaintiff's feared harms were speculative and unsupported by evidence. *See* ECF No. 12 at 17–18.

On October 11, 2022, Plaintiff renewed her request for an injunction directing RJD to assign her to single-cell housing. *See generally* ECF No. 15. On October 26, 2022, the Court again denied the renewed motion, "because Defendants have not yet been served, Plaintiff has alleged only speculative fears of potential future harm, and Plaintiff has not yet shown a likelihood of success on the merits." ECF No. 16 at 6 (citation omitted).

On November 15, 2022, Waivers of Service were returned executed for the six named Defendants remaining in this action. *See* ECF Nos. 17–22. On November 28, 2022, Plaintiff filed the instant Motion, again renewing her request for single-cell housing. *See generally* Mot.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as a matter of right." *Id.* at 22, 24.

Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this approach,

a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits. A mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal citations, quotation marks, and alterations omitted). "'In cases such as the one before [this Court] in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984)). Such injunctions are "particularly disfavored," and "the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* at 1320 (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (internal quotation marks omitted).

## ANALYSIS

Plaintiff's Motion once more seeks "an inju[n]ction requiring Defendants to issue [Plaintiff] single cell housing." *See* Mot. at 5. However, the Court finds that it cannot issue the requested mandatory injunction on the record presently before it.

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). "[Plaintiff's] burden here is doubly demanding: Because [Plaintiff] seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the

1  remaining three [*Winter* elements]." *Id.* (citing *Ass'n des Eleveurs de Canards et d'Oies
2  du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (internal quotation marks omitted).

3        Regarding the likelihood of success factor, Plaintiff first argues that, "if the Court is
4  obligated to accept the plaintiff's allegations as true, it would seem only fair that the Court
5  would not insinuate that the plaintiff is not likely to prevail on the claims." Mot. at 6. That,
6  however, is not the standard for injunctive relief, and would render a PI more or less a
7  matter of right rather than the extraordinary remedy it is.

8        Plaintiff further claims that "there has already been relevant evidence presented to
9  this Court that actually substantiates some of the plaintiff's claims if not all." *Id.*
10 Specifically, Plaintiff argues that her Inmate Housing Precaution, her privacy grievance,
11 the letter submitted to PREA Compliance Manager Deputy Warden Palmer, and her fully
12 exhausted health care grievance "are substantial exhibits that show[] the Court the
13 plaintiff's contentions at least have some merit and there is no reason for the Court to
14 assume that the plaintiff would not prevail on these claims." *Id.* at 6–8. Thus, "the prong
15 of plaintiff likely succeeding on the civil complaint is not impossible." *Id.* at 9. However,
16 likely success on the merits, much less a showing that the facts and law clearly favor
17 Plaintiff's position, *see Garcia*, 786 F.3d at 740, requires far more than Plaintiff
18 demonstrating that her contentions have "some merit," Mot. at 8, or are "not impossible,"
19 *id.* at 9; *see, e.g.*, *Wilson v. Allison*, No. 22-CV-04838-JSC, 2022 WL 4234964, at *4 (N.D.
20 Cal. Aug. 30, 2022) ("While Plaintiff's papers are sufficient, when liberally construed, to
21 satisfy 28 U.S.C. § 1915A by stating claims upon which relief may be granted under the
22 Eighth Amendment, they are not sufficient to satisfy the higher standard for a [PI] of
23 showing that he is likely to succeed on the merits of such claims.").

24       As the Court has previously noted, to state an Eighth Amendment claim based on a
25 condition of confinement, such as a serious medical need or a substantial risk to safety, a
26 prisoner must adequately allege: (1) an objectively and sufficiently serious deprivation, and
27 (2) that the official was subjectively deliberately indifferent to the inmate's health or safety.

*See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  These two requirements are known as the objective and subjective prongs of an Eighth Amendment deliberate indifference claim. To satisfy the objective prong, there must be a deprivation, such as a serious medical need, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), or a substantial risk of serious harm, *Farmer*, 511 U.S. at 834.  For the subjective prong, there must be deliberate indifference.  A prison official is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm or serious medical need and disregards that risk by failing to take reasonable steps to abate it.  *Id.* at 837.  The official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id*.  A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable measures to abate it.  *Id*.

Applying these principles, the Court simply cannot find, on the record presently before it, that Plaintiff has made the requisite showing of at least serious questions going to the merits of her claims such that the extraordinary remedy of mandatory injunctive relief is warranted at this time.  Even assuming Plaintiff's evidence shows a likely objective deprivation of Plaintiff's constitutional rights to necessary medical care and/or her personal safety, Plaintiff's evidence utterly fails to make any showing whatsoever as to any Defendant's deliberate indifference to her health or safety.  That the evidence necessary to make such a showing often is simply unavailable at the pleading stage is underscored by the fact that injunctive relief in other cases involving Eighth Amendment claims brought by transgender inmates often issues only after an evidentiary hearing, or at the least the submission of expert testimony.  *See, e.g.*, *Edmo v. Idaho Dep't of Corr.*, 2022 WL 16860011, Case No. 1:17-cv-00151-BLW, at * 1 (D. Idaho Sept. 30, 2022) (noting that a transgender inmate plaintiff obtained a preliminary injunction on Eighth-Amendment grounds after a three-day evidentiary hearing); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1177 (N.D. Cal. 2015) (granting preliminary injunctive relief to inmate for denial of

medical treatment for gender dysphoria in violation of the Eighth Amendment where parties had submitted expert reports). While the Court is sympathetic to Plaintiff's situation, at this time, the Court simply cannot grant Plaintiff the extraordinary remedy she seeks.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Plaintiff's Renewed Motion for Preliminary Injunction (ECF No. 23) **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  December 16, 2022

Hon. Janis L. Sammartino
United States District Judge