1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | JOSEPH C. MOORE,

12 |                                Plaintiff,

13 | v.

14 | M. PALMER, Deputy Warden;
15 | D. LEWIS, Associate Warden;
    | A. TAYLOR; A MEZA; R. CENTENO;
16 | and CHRISTOPHER DAUB,

17 |                                Defendants.

Case No.:  22-CV-539 JLS (LR)

**ORDER (1) DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; (2) DENYING PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING; AND (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

(ECF No. 29)

18
19
20
21

22        Presently before the Court is Plaintiff Joseph C. Moore's ("Plaintiff" or "Moore")

23 "Request for Evidentiary Hearing & Preliminary Injunction" ("Mot.," ECF No. 29).  The

24 Court requested briefing on the Motion.  *See* ECF No. 30.  Defendants M. Palmer, D.

25 / / /

26 / / /

27 / / /

Lewis, A. Taylor-Garcia, C. Meza, R. Centeno, and C. Daub (collectively, "Defendants")[1] filed an Opposition to the Motion ("Opp'n," ECF No. 32), and Plaintiff filed a Reply in support of the Motion ("Reply," ECF No. 35). Having carefully considered the Parties' briefing, the evidence, and the law, the Court **DENIES** Plaintiff's supporting Request for Judicial Notice, **DENIES** her[2] request for an evidentiary hearing, and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion.

BACKGROUND

Plaintiff, a transgender woman, was transferred to R.J. Donovan Correctional Facility ("RJD") in San Diego, California, a "designated hub" for housing transgender inmates, in February 2018. Compl. at 11. In her Complaint, Moore alleges that, upon her arrival at RJD, she informed her correctional counselor that she wanted a single cell to "avoid any future harassment or assault attempts by other inmates." *Id.* at 12. At the classification hearing, however, Moore was assigned a double cell. *Id.*

Inmate M. was assigned as Moore's cellmate. *Id.* at 12–13. On March 8, 2018, Moore alleges "Inmate M. forced her to perform a sexual act on [him] in the middle of the night." *Id.* at 13. Moore reported the incident to correctional staff under the Prison Rape Elimination Act ("PREA") and was interviewed by the Investigative Services Unit about the incident. *Id.* Prison officials ultimately found Moore's PREA claim "unsubstantiated." *Id.*

Moore again sought single-cell housing "to protect her from any further abuse or harassment." *Id.* at 13. During the next two years, Moore alleges she was "forced . . . to live with numerous . . . inmates who were mentally challenged and had histories of

---

[1] It appears several of Defendants' names as set forth in the caption may contain typographical or spelling errors; accordingly, the Court uses the names set forth in Defendants' Opposition. *See generally* ECF No. 32.

[2] Plaintiff is a transgender woman and refers to herself using she/her pronouns in her Complaint and other filings; the Court, therefore, will do the same in this Order.

violence." *Id.* She alleges that "some of those inmates tried to have sex with [her] or harassed her by making comments when she undressed or used the restroom." *Id.* at 13. Moore alleges this happened "from 2018 through 2020 and once in 2021." *Id.*

In August 2020, Moore again requested a single cell. *Id.* at 14. Defendant Centeno interviewed Moore; reviewed her file, which included the 2018 PREA allegations; but ultimately declined to recommend Moore for a single cell. *Id.* Defendant Taylor "endorsed" Centeno's decision. *Id.* On September 3, 2020, Defendant Daub, a mental health supervisor, interviewed Moore, who told Daub that she needed a single cell to protect her mental health, physical safety, and "serious medical needs." *Id.* Daub nonetheless denied her "health care grievance." *Id* at 14–15. Subsequent administrative grievances filed by Moore were also denied. *Id.* at 15.

On March 21, 2022, Defendants Palmer and Lewis, RJD Chief Deputy Warden and Associate Warden, respectively, interviewed Moore. *Id.* at 16. They discussed Moore's history and medical needs. Moore told Palmer and Lewis that she needed to be housed in a single cell due to her serious medical needs and for her safety. *Id.* Palmer ultimately declined to approve Moore for a single cell. *Id.* at 16–17.

On April 15, 2022, Moore commenced the instant civil action pursuant to 42 U.S.C. § 1983 and also filed motions to proceed *in forma pauperis* ("IFP") and for a preliminary injunction ("PI"). *See* ECF Nos. 1–3. In her Complaint, Moore raised Eighth Amendment, Due Process, and Equal Protection claims. She alleged she has been improperly denied single-cell housing and, as a result, she has been unable receive adequate medical care for her gender dysphoria. *See generally* Compl. She further alleged that she is unable to pursue hormone replacement therapy because hormones will cause "her breasts [to] get bigger," which will, in turn, "entice cellmates to harass or assault her." *Id.* at 5. She stated that the "mental stress of being forced to live with others and undress and bathe in front of them while they watch her" deprives her of "safe living arrangements" and, in turn, "denie[s] her medical treatment." *Id.* Moore filed another motion for a PI on August 2,

2022, as well as subsequent supporting documents and exhibits. *See* ECF Nos. 6–10. Plaintiff's PI motions primarily sought an injunction requiring prison officials at RJD to assign her to single-cell housing. *See generally* ECF Nos. 3, 6. However, Plaintiff also sought additional injunctive relief, including an order requiring prison officials to refrain from "retaliatory punishment against her," *see* ECF No. 3 at 4–7; an order requiring that any interviews of her by prison officials be conducted in the presence of an assistant warden and recorded, *see id.* at 8–9; and a "gag order" preventing prison officials from discussing this case, *see id.* at 11.

On September 22, 2022, the Court granted Plaintiff's IFP motion and screened Moore's Complaint. *See* ECF No. 12. In its Order, the Court dismissed three Defendants, dismissed Moore's Equal Protection and Due Process claims as to all Defendants for failure to state a claim, and ordered service by the U.S. Marshal of the remaining six Defendants as to Moore's Eighth Amendment claims. *See id.* In the same Order, the Court denied the PI motions for multiple reasons, including that the Court lacked personal jurisdiction over the Defendants, who had not yet been served; that the Court could not enjoin claims not pleaded in the Complaint or individuals who are not parties to the action; and that Plaintiff's feared harms were speculative and unsupported by evidence. *See id.* at 17–18.

On October 11, 2022, Plaintiff renewed her request for an injunction directing RJD to assign her to single-cell housing. *See generally* ECF No. 15. On October 26, 2022, the Court denied the renewed motion, finding that, "because Defendants ha[d] not yet been served, Plaintiff has alleged only speculative fears of potential future harm, and Plaintiff has not yet shown a likelihood of success on the merits." ECF No. 16 at 6 (citation omitted).

On November 15, 2022, Waivers of Service were returned executed for the six named Defendants remaining in this action. *See* ECF Nos. 17–22. On November 28, 2022, Plaintiff filed a Renewed Motion for Preliminary Injunction, again renewing her request for single-cell housing. *See generally* ECF No. 23. On December 16, 2022, the Court

4

denied the motion without prejudice, stating: "the Court simply cannot find, on the record presently before it, that Plaintiff has made the requisite showing of at least serious questions going to the merits of her claims such that the extraordinary remedy of mandatory injunctive relief is warranted at this time," given that "Plaintiff's evidence utterly fails to make any showing whatsoever as to any Defendant's deliberate indifference to her health or safety."  ECF No. 28 at 7.  In so ruling, the Court recognized "[t]hat the evidence necessary to make such a showing often is simply unavailable at the pleading stage."  *Id.*

Undeterred, on January 12, 2023, Plaintiff filed the instant Motion, supported by requests for judicial notice and an evidentiary hearing.  *See generally* Mot.

## REQUEST FOR JUDICIAL NOTICE

Plaintiff requests the Court to judicially notice the following: (1) California Senate Bill 132 ("The Transgender Respect, Agency, and Dignity Act") and California Penal Code §§ 2605–06 promulgated thereby; (2) *Griswold v. Connecticut*, 381 U.S. 479 (1965), and *York v. Story*, 324 F.2d 450 (9th Cir. 1963); (3) the World Professional Association for Transgender Health's ("WPATH") Standards of Care for the Health of Transgender and Gender Diverse People ("WPATH SOC"); and (4) her attached CDCR medical and mental health care records.  Mot. at 25–35.[3]

Per Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it "is not subject to reasonable dispute because it (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Rule 201, however, deals only with adjudicative facts.  *See Lindland v. TuSimple, Inc.*, Case No. 21-CV-417 JLS (MDD), 2022 WL 687148, at *3 (S.D. Cal. Mar. 8, 2022) (citation omitted).  "Adjudicative facts are simply facts of the particular case," whereas

---

[3] In citing to the Motion, the Court refers to the blue numbers stamped in the upper righthand corner of each page by the District's case management/electronic case filing system.

legislative facts are those related to "legal reasoning and lawmaking." Fed. R. Evid. 201(a), Notes of Advisory Committee on Proposed Rules Subdivision (a).  "It is unnecessary to request that the court judicially notice published cases from California and federal courts as legal precedent; the court routinely considers such legal authorities in doing its legal analysis without a party requesting that they be judicially noticed."  *Lindland*, 2022 WL 687148, at *3 (quoting *Lucero v. Wong*, No. C 10-1339 SI PR, 2011 WL 5834963, at *5 (N.D. Cal. Nov. 21, 2011)); *see Benton v. Cory*, 474 F. App'x 622, 623–24 (9th Cir. 2012) ("We grant [appellant]'s request for judicial notice of court filings in other proceedings, but deny as unnecessary his request for judicial notice of legal authorities." (citing *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011))); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *2 (S.D. Cal. May 14, 2018) ("It is well established that []courts may consider legal reasoning and conclusions of other federal courts without resort to Rule 201." (citing *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1224 (S.D. Cal. 2015))); *Nguyen v. Cavalry Portfolio Servs., LLC*, No. 15-CV-0063-CAB-BLM, 2015 WL 12672149, at *2 (S.D. Cal. Feb. 20, 2015) ("[I]t is inappropriate to request that the Court take judicial notice of legal authority, as judicial notice is reserved for adjudicative fact[s] only.") (quoting *Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal. Aug. 15, 2013)); *Lathan v. Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017) (denying as unnecessary request for judicial notice as to "statutes, regulations, or published opinions").  Thus, judicial notice of The Transgender Respect, Agency, and Dignity Act, provisions of California's Penal Code, and federal cases is unwarranted.

As to the WPATH SOC, while "many of the major medical and mental health groups in the United States . . . recognize the WPATH Standards of Care as representing the consensus of the medical and mental health communities regarding the appropriate treatment for transgender and gender dysphoric individuals," *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019), the fact is that the WPATH SOC "are not binding," even if

they "hav[e] some persuasive value," *Santiago v. Gage*, Case No. 3:18-cv-05825-RBL-JRC, 2019 WL 6096229, at *3 (W.D. Wash. Sept. 12, 2019), *report and recommendation adopted in part, rejected in part*, No. 3:18-CV-05825-RBL, 2019 WL 6052492 (W.D. Wash. Nov. 15, 2019), *aff'd*, 859 F. App'x 112 (9th Cir. 2021).  Indeed, the WPATH SOC explicitly acknowledge that clinical departures from the SOC may be necessary.  E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 INT'L J. OF TRANSGENDER HEALTH 51, 55 (2022), *available at* https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644; *see also Edmo*, 935 F.3d at 769–70.  Accordingly, the Court cannot and will not judicially notice the WPATH SOC as the sole acceptable standard of care for the treatment of gender dysphoria. *See, e.g.*, *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) ("[T]he WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested medical debate over sex reassignment surgery."); *Edmo v. Corizon, Inc.*, 949 F.3d 489, 498 (9th Cir. 2020) (opinion on denial of rehearing en banc) ("WPATH's recommendation for institutionalized persons merely expresses a policy preference.").  On the record presently before this Court, it appears that the medical propriety of the WPATH SOC as a treatment regime is a matter subject to reasonable dispute and thus not properly judicially noticed under Federal Rule of Evidence 201.

Finally, "[m]edical records are generally not considered to be adjudicative facts appropriate for judicial notice."  *Jones v. Billionaire Burgers, Inc.*, Case No. 2:22-cv-00110-MEMF(PVCx), 2023 WL 1107866, at *3 (C.D. Cal. Jan. 26, 2023) (citation omitted).  "The court shall not take judicial notice of prison medical records absent a showing that the medical records were matters of public record."  *Dillingham v. Garcia*, No. 1:19-cv-00461-AWI-GSA-PC, 2019 WL 2577196, at *2 (E.D. Cal. June 24, 2019).

Accordingly, the Court **DENIES** Plaintiff's Request for Judicial Notice.  To be clear, the Court's denial of Plaintiff's request does not mean that the Court cannot or will not consider the legal authorities she has identified or the evidence she has adduced; it merely

means that the identified materials fail to meet the stringent and narrow criteria for matters subject to judicial notice.

## REQUEST FOR EVIDENTIARY HEARING

Plaintiff further requests an evidentiary hearing to "substantiate plaintiff's claims of deprivation of needed accom[m]odations pertaining to Moore's 'serious medical needs', and the irreparable harm that plaintiff will suffer if the PI is not granted." Mot. at 9. Plaintiff indicates her plans to call four "expert witnesses" at the requested evidentiary hearing: (1) Dr. Lilia Danilov, the CDCR psychiatrist who diagnosed Plaintiff with gender dysphoria in 2018; (2) Dr. Maria Dunton, the specialist presently "in charge of managing plaintiff's gender conforming hormone therapy"; (3) Dr. Amanda Powers, a psychologist who specializes in treating patients with gender dysphoria who also diagnosed Plaintiff with gender dysphoria and "was Moore's Mental Health Clinician for some time at RJD"; and (4) Dr. L. Saidro, Moore's current primary care physician. *Id.* Defendants oppose the request, noting that "the medical records that Plaintiff attached in support of her motion for a preliminary injunction demonstrate that these witnesses are unlikely to provide testimony sufficient to demonstrate that Plaintiff is exposed to a risk of harm arising from her housing designation." Opp'n at 6.

Courts within the Ninth Circuit "do not indulge a presumption in favor of evidentiary hearings" on motions for injunctive relief. *Kenneally v. Lungren*, 967 F.2d 329, 334 (9th Cir. 1992) (citations omitted). Rather, "the rule in the Ninth Circuit is that a preliminary injunction 'may, in the discretion of the trial court, be granted or denied upon the affidavits.'" *McGiboney v. Corizon*, Case No. 4:18-cv-00529-DCN, 2020 WL 1666805, at *7 (D. Idaho Apr. 3, 2020) (quoting *S.F.-Oakland Newspaper Guild v. Kennedy*, 412 F.2d 541, 546 (9th Cir. 1969)). This District's Civil Local Rules further recognize the Court's discretion to decide motions without hearing oral argument. *See* S.D. Cal. CivLR 7.1(d)(1).

/ / /

In light of the foregoing principles and at this early juncture in the case, the Court, in its discretion, **DENIES** Plaintiff's request for an evidentiary hearing.[4]

## MOTION FOR PRELIMINARY INJUNCTION

### I.   Legal Standard

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as a matter of right." *Id.* at 22, 24.

Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits. A mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal citations, quotation marks, and alterations omitted). "'In cases such as the one

---

[4] In light of the Court's disposition of this issue, the Court further **DENIES AS MOOT** the request, advanced in Defendants' Opposition, that the Court quash certain subpoenas attached to the Motion as procedurally defective. *See* Opp'n at 9–10.

before [this Court] in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984)).  Such injunctions are "particularly disfavored," and "the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* at 1320 (internal quotation marks omitted) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act ("PLRA") imposes additional requirements on any prisoner seeking preliminary injunctive relief "in any civil action with respect to prison conditions." *See* 18 U.S.C. § 3626(a)(2).  Namely, in such instances, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Id.*  Moreover, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief." *Id.*  Thus, the PLRA "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 999 (9th Cir. 2000).

## II.   Analysis

Plaintiff seeks an injunction requiring her to be housed in a single cell. *See* Mot. at 89.  As this Court previously has noted, "[t]he first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  "[Plaintiff's] burden here is doubly demanding: Because [Plaintiff] seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original).  "Because it

is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Id.* (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (internal quotation marks omitted).

As before, the Court simply cannot find, on the record presently before it, that Plaintiff has made the requisite showing as to the first *Winter* factor to justify the extraordinary remedy of mandatory injunctive relief. *See generally* Mot.; Opp'n; Reply. Discovery has only recently started in this case. Plaintiff cites repeatedly to *Edmo v. Corizon, Inc.*, and *Norsworthy v. Beard*, both of which are civil rights cases stemming from the (mis)treatment of an inmate's gender dysphoria, to justify her requested relief. Those cases, however, are distinguishable. The Court notes that the preliminary injunction in *Edmo* only issued after "four months of extensive fact and expert discovery in preparation for the [three-day evidentiary] hearing," during which each side had eight hours to present its case and submitted "thousands of pages of exhibits" to the Court. 935 F.3d 757, 775 (9th Cir. 2019). Similarly, the preliminary injunction in *Norsworthy* only issued after fact and expert discovery had been completed. 87 F. Supp. 3d 1164 (N.D. Cal. 2015) (order granting preliminary injunctive relief to inmate for denial of medical treatment for gender dysphoria in violation of the Eighth Amendment where depositions of the parties had been taken and expert witnesses had been retained and written reports for both sides). While the Court is sympathetic to Plaintiff's situation, on the undeveloped factual and evidentiary record presently before it, the Court cannot grant Plaintiff the extraordinary relief she seeks. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion. *See McQueen v. Brown*, No. 215CV2544JAMACP, 2019 WL 949442, at *11 (E.D. Cal. Feb. 27, 2019) (in prisoner's civil rights action alleging Eighth Amendment claims arising from treatment of gender dysphoria, denying motion for preliminary injunctive relief without prejudice "[i]n light of the importance of this matter, the limited briefing on the merits," and concurrently granted appointment of counsel), *report and recommendation*

*adopted*, No. 215CV2544JAMACP, 2019 WL 2491271 (E.D. Cal. June 14, 2019).  The Court cautions Plaintiff that it is strongly disinclined to consider further requests for preliminary injunctive relief barring further development of the evidence and factual record or the occurrence of significant and pertinent factual developments that would merit revisiting the issue.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Request for Judicial Notice (ECF No. 29), **DENIES** Plaintiff's Request for Evidentiary Hearing (ECF No. 29), and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Preliminary Injunction (ECF No. 29).  As noted, barring any significant new developments in this case, the Court strongly discourages Plaintiff from filing any further motions for preliminary injunctive relief before the factual record has been more fully developed in this matter.

**IT IS SO ORDERED.**

Dated:  March 20, 2023

Hon. Janis L. Sammartino
United States District Judge